**Rosario ANGELOPOULOS,**
**an individual, Appellee**

v.

**LAZARUS PA INC., Rich's Department Stores Inc., and Federated Department Stores Inc., Appellants.**

Superior Court of Pennsylvania.

Argued May 10, 2005.

Filed Aug. 26, 2005.

Reargument Denied Nov. 4, 2005.

Gerard J. Cipriano, Pittsburgh, for appellants.

James F. Rosenberg, Pittsburgh, for appellee.

Before: MUSMANNO, TODD and BOWES, JJ.

MUSMANNO, J.:

¶ 1 Lazarus PA Incorporated, Rich's Department Stores Incorporated, and Federated Department Stores Incorporated (collectively, "Lazarus") appeal from the Order granting the Motion for a new trial filed by Rosario Angelopoulos ("Angelopoulos"). We affirm.

¶ 2 While shopping at a Lazarus Department Store, Angelopoulos approached an irresistible display of Godiva chocolate. According to Angelopoulos, one box of chocolates did not have a lid, and the interior cellophane wrapper covering the chocolate was slashed on both sides of the box. N.T., 9/2–5/03, at 17. At trial, Angelopoulos described the display as follows:

It was just a treat to look at it, so I go to look at it and I touch it and I move my eyes to the side and I see the small box with the plastic—like something had a slide—slashed it, kind of curled up, like it was saying, Please help yourself.

*Id.* at 16. Thinking that the open box was a free sample, Angelopoulos thought,

I said, Oh, my God. If anything, it was my cholesterol that came to me. Should [I] have one?

And I said, Well, one won't hurt me. That was my feeling. And I took the box and I took one.

*Id.* Unable to resist temptation, Angelopoulos succumbed to the call of the chocolate, ate a piece, and then returned to the display several minutes later and consumed a second piece. Thinking that the chocolates were a free sample, Angelopoulos did not pay for either morsel of chocolate. *Id.* at 67, 72.

¶ 3 The trial court's Opinion described what next transpired:

Several minutes later, Michael Demicco ["Demicco"], a loss prevention associate for Lazarus, followed by Janet Lesure, a trainee for loss prevention, approached [Angelopoulos]. [Demicco] requested that [Angelopoulos] follow him to the loss prevention office located in the Lazarus store. [Angelopoulos] complied. [Demicco] and Ms. Lesure searched [Angelopoulos's] purse and bags and Ms. Lesure performed a search of her body. [Angelopoulos] was then handcuffed to a table affixed to the floor. Her identification documentation and her Lazarus credit card were taken from her purse.

[Demicco] presented [Angelopoulos] with a statement of admission. He completed her name and address and the dollar amount of the merchandise allegedly taken by [Angelopoulos]. Only the signature line was blank. [Angelopoulos] objected to the admission form and asked to see the store manager. [Llewellyn], [Demicco's] supervisor, entered the room and agreed to find the store manager. He returned, accompanied by Patty Connelly, a store manager. [Angelopoulos] asked to have the handcuffs removed and Ms. Connelly indicated

that she did not have the power to have the handcuffs removed and that it was the policy of the loss prevention group to handcuff everyone suspected of shoplifting.

After repeated refusals to sign the admission form, [Angelopoulos] ultimately did agree to sign the form provided that [Demicco] wrote on the form, "Took 2 pieces of chocolate out of box and ate it without purchase. Foil was cracked." She was then released from the handcuffs. [Demicco] then told [Angelopoulos] that Lazarus must take her photograph, to which she objected. She then scratched out her signature from the admission form. Throughout the detention process, [Angelopoulos] was kept handcuffed continuously for a period of approximately 50 to 55 minutes.

Trial Court Opinion, 8/31/04, at 1–4. Lazarus filed no charges against Angelopoulos as a result of the incident.

¶4 Angelopoulos subsequently filed a Complaint against Lazarus asserting claims of false imprisonment and battery. At the close of the trial, the jury received the following written interrogatories:

*False Imprisonment*

Question 1: Do you find that [Lazarus] intentionally caused the confinement of [Angelopoulos] against her will? (Jury's answer: Yes.)

Question 2: Do you find that [Lazarus] had probable cause to believe that [Angelopoulos] had committed or was committing a theft of merchandise from the store? (Jury's answer: Yes.)

Question 3: Do you find that [Lazarus's] detention of [Angelopoulos] was done in a reasonable manner, for a reasonable time, and for a proper purpose? (Jury's answer: Yes.)

*Battery*

Question 4: Do you find that [Lazarus] committed a battery against [Angelopoulos]? (Jury's Answer: No.)

*See* Trial Court Opinion, 8/31/04, at 4. The jury found Lazarus not liable on both counts, after which Angelopoulos filed post-trial Motions.

¶5 The trial court granted Angelopoulos's Motion for a new trial, concluding that the jury's answer to Question 3 of the written interrogatories was against the weight of the evidence. Specifically, the trial court determined that "Lazarus's policies and practices with regard to retail theft, as applied to [Angelopoulos] on October 29, 2001, were in violation of the Retail Theft Act." *Id.* at 12. In support of its conclusion, the trial court set forth the following explanation in its Opinion:

The [trial court] reaches this conclusion based upon a confluence of factors, all of which were in play on the day in question: the handcuffing of [Angelopoulos]; the refusal to release [Angelopoulos] from the handcuffs once she objected; the use of the handcuffs and detention to accomplish a purpose beyond one of the six reasons enumerated in the Retail Theft Act; the duration of the detention; the presentation of the admission form; and the refusal of Lazarus to release [Angelopoulos] when she stated that she would not sign the admission form, even though there was no longer any reason to continue to detain her for one of the enumerated purposes under the Act.

*Id.* at 12. Thereafter, Lazarus filed the instant timely appeal.

¶6 Lazarus presents the following claims for our review:

I. Whether the trial court abused its discretion and invaded the province of the jury by granting a new trial on the grounds that the verdict was against the weight of the evidence where the evidence was, at best,

conflicting and the trial judge merely would have reached a different decision on the same facts?

II. Whether the trial court erred in submitting punitive damages to the jury?

Brief for the Appellants at 4. We will address these claims in order.

■ ¶ 7 Lazarus first claims that the trial court abused its discretion and invaded the province of the jury by granting a new trial on the basis that the verdict was against the weight of the evidence. According to Lazarus, "the evidence regarding whether [Angelopoulos's] detention was reasonable in duration and purpose was conflicting and the trial court merely would have answered jury interrogatory number three differently on the same set of facts." Brief for the Appellants at 24. Lazarus asserts that the jury could reasonably have found that Lazarus had probable cause to detain Angelopoulos, and that the detention was for a reasonable time and conducted in a reasonable manner. *Id.*

■ ¶ 8 When reviewing an attack on the trial court's grant of a new trial, we will not disturb its decision absent an abuse of discretion or clear error of law. *Mammoccio v. 1818 Mkt. P'shp*, 734 A.2d 23, 28 (Pa.Super.1999). An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1123 (2000).

■ ¶ 9 "One of the least assailable grounds for the exercise of such power [*i.e.*, granting a new trial,] is the trial court's conclusion that the verdict was against the weight of the evidence and that the interests of justice therefore require that a new trial be awarded; especially in

such a case is an appellate court reluctant to interfere." *Hershey v. Pittsburgh & W.V.R. Co.*, 366 Pa. 158, 76 A.2d 379, 381 (1950) (citations omitted); *accord Armbruster v. Horowitz*, 572 Pa. 1, 813 A.2d 698, 703 (2002).

[The Pennsylvania Supreme Court] has repeatedly emphasized that it is not only a trial court's inherent fundamental and salutary power, but its duty to grant a new trial when it believes the verdict was against the weight of the evidence and resulted in a miscarriage of justice. Although a new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion, a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Armbruster*, 813 A.2d at 703 (quoting *Thompson v. City of Philadelphia*, 507 Pa. 592, 493 A.2d 669, 672 (1985) (citations omitted)).

¶ 10 The Retail Theft Act ("the Act") provides, in relevant part, as follows:

A peace officer, merchant or merchant's employee or an agent under contract with a merchant, who has probable cause to believe that retail theft has occurred or is occurring on or about a store or other retail mercantile establishment and who has probable cause to believe that a specific person has committed or is committing the retail theft may detain the suspect in a reasonable manner for a reasonable time on or off the premises for all or any of the following purposes: to require the suspect to identify himself, to verify such identification, to determine whether such suspect has in his possession unpurchased merchandise taken from the mercantile es-

tablishment and, if so, to recover such merchandise, to inform a peace officer, or to institute criminal proceedings against the suspect. Such detention shall not impose civil or criminal liability upon the peace officer, merchant, employee, or agent so detaining.

18 Pa.C.S.A. § 3929. Thus, the Act authorized Lazarus to detain Angelopoulos, without civil liability, for the purpose of (a) identifying Angelopoulos, (b) verifying her identity, (c) determining whether she had unpurchased merchandise in her possession, (d) recovering unpurchased merchandise from Angelopoulos's possession, (e) informing a peace officer, and (f) instituting criminal proceedings.

¶ 11 In this case, the trial court determined that Lazarus's detention of Angelopoulos violated the Act, as Lazarus held Angelopoulos beyond the time necessary to conduct the purposes authorized by the Act. The trial court explained its determination as follows:

> [T]he use of handcuffs is not a *per se* violation of the Retail Theft Act so long as the handcuffs are used to accomplish one or more of the enumerated justifications of a detention. It is apparent that Lazarus handcuffed [Angelopoulos] initially for legitimate purposes. However, once they were able to identify [Angelopoulos] (they had her identification documentation and her Lazarus charge card), and confirm by searching her that she did not possess any unpurchased merchandise (she was only observed eating two pieces of chocolate), there was no longer any reason to detain her, and unquestionably no reason to keep her handcuffed. Fifty to fifty-five minutes appears to be an unusually long period of time under the circumstances for a few ministerial acts. Lazarus had no intention of informing a peace officer at that time nor did they intend to detain her for the purpose of instituting criminal proceedings at that time. There no longer existed any statutorily permitted reasons to continue her detention. At that point, [Angelopoulos] should have been released from her handcuffs as she had repeatedly requested. Once they refused to release her, as testified to by [Demicco], the handcuffing went beyond the bounds of the principal reasons behind the Act, and beyond the bounds of decency. To continue to keep her handcuffed, while presenting to her for her signature what is essentially a confession form, is clearly unjustified.

Trial Court Opinion, 8/31/04, at 13. The trial court's determination is supported by the overwhelming evidence of record.

¶ 12 At trial, Demicco, Lazarus's loss prevention specialist, testified that he observed Angelopoulos on a video security monitor. N.T., 9/2–5/03, at 4. Over a span of about four minutes, Demicco saw Angelopoulos eat two pieces of Godiva chocolate from an opened box on a store display. *Id.* As a result, Demicco approached Angelopoulos and asked her to follow him to an "apprehension room." *Id.* at 5.

¶ 13 The testimony at trial reveals that Demicco escorted Angelopoulos to the apprehension room at 3:45 p.m. *Id.* at 79. Once Demicco and Angelopoulos arrived in the apprehension room, a female security guard performed a pat-down search of Angelopoulos, after which she was handcuffed to a table in the room. *Id.* at 5–6. Also upon entering the room, someone from the loss prevention department searched Angelopoulos's bags to make certain no other unpurchased goods were present in the bags. *Id.* at 65. Demicco asked for and received Angelopoulos's identification. *Id.* at 66. At that point in time, Angelopoulos asked to be released from the handcuffs. *Id.* at 67–68.

¶ 14 Rather than releasing Angelopoulos from the handcuffs, Demicco showed Angelopoulos an "admission form," and explained to her that once he wrote down her general information, "it was up to her if she wanted to admit to it, then she would sign it. If not, then she would be released." *Id.* at 68. Demicco further testified that he would not release Angelopoulos from the handcuffs "until I got down her general information and **explained [the form] to her.**"[1] *Id.* at 69 (emphasis added).

¶ 15 Demicco acknowledged that Angelopoulos, at first, did not want to sign the form. *Id.* at 69, 71. When Demicco refused to release Angelopoulos from the handcuffs, Angelopoulos asked to see a store manager. *Id.* at 71–72. Demicco first brought [Llewellyn], the manager of loss prevention for Lazarus's South Hills Village store, to speak with Angelopoulos. *Id.* at 72. When Llewellyn refused to release Angelopoulos from the handcuffs, she again asked to speak with a store manager. At that time, Patty Connelly ("Connelly"), the executive vice-president of the store, arrived to speak with Angelopoulos. *Id.* Connelly declined to interfere. *Id.* at 73.

¶ 16 At trial, Llewellyn admitted that Angelopoulos asked to be released from the handcuffs as soon as he entered the room. *Id.* at 143. Llewellyn further admitted that prior to his encounter with Angelopoulos, he had checked out Angelopoulos's credit history at the store. *Id.* at 148. Thus, the record is clear that at the very latest, Lazarus possessed the information necessary to identify Angelopoulos, and to verify her identity, at the beginning of the encounter between Llewellyn and Angelopoulos.

¶ 17 Demicco testified that if a person refused to sign the "admission form," they would be released from the handcuffs and be "free to go." *Id.* at 39. Thus, the record is also clear that Lazarus did not intend to detain Angelopoulos for the purpose of calling a peace officer or initiating criminal proceedings, but for the purpose of presenting an admission form and gaining the suspected shoplifter's signature on that form.

¶ 18 Based upon the foregoing, we discern no abuse of discretion by the trial court in concluding that the jury's answer to Question Number 3 on the written interrogatories was against the weight of the evidence. At the *very latest,* Lazarus's authority to detain Angelopoulos ended prior to the time Llewellyn entered the apprehension room. The only purpose for further detaining Angelopoulos was to secure her signature on an admission form. We agree with the trial court's conclusion that Lazarus's continued detention of Angelopoulos, in handcuffs, exceeded all bounds of decency and we express our outrage at such a procedure. Such coercive tactics are not authorized by the Retail Theft Act. Accordingly, we affirm the trial court's grant of a new trial based upon Angelopoulos's challenge to the weight of the evidence.[2]

1. At trial, Demicco described the standard procedure for gathering information from suspected shoplifters. According to Demicco, once detained and handcuffed, a suspected shoplifter was not permitted to make a telephone call without a manager's permission. *Id.* at 43. The suspected shoplifter is not permitted to go to the bathroom and is not told when he or she might be released. *Id.* at

43. Demicco testified that "I tell them as long as I get my general information and that's basically it, if they want to admit to it and sign it, that's fine; if not, then they're going to be released." *Id.* at 43.

2. Contrary to Lazarus's assertions, our review of the record discloses no bias on the part of the trial judge. The record supports the trial

■ ¶ 19 Lazarus next claims that the trial court erred in submitting the issue of punitive damages to the jury. According to Lazarus, there was no evidence that Lazarus "acted with malice, ill-will, or in reckless disregard of [Angelopoulos's] rights." Brief for Appellants at 32. We disagree.

■ ¶ 20 "Punitive damages are awarded to punish a defendant for certain outrageous acts and to deter [it] or others from engaging in similar conduct." *G.J.D. v. Johnson*, 552 Pa. 169, 713 A.2d 1127, 1131 (1998) (citation omitted) (emphasis deleted). In general, the assessment of punitive damages is proper whenever a party's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct resulting from either an evil motive or because of a reckless indifference to the rights of others. *Ruffing v. 84 Lumber Co.*, 410 Pa.Super. 459, 600 A.2d 545, 551 (1991). It is the role of the trial court to determine, in its discretion, whether the plaintiff has presented sufficient evidence from which a jury could reasonably conclude that the defendant acted outrageously. *Slappo v. J's Development Assoc., Inc.*, 791 A.2d 409, 417 (Pa.Super.2002). We review the trial court's decision for an error of law. *Id.*

¶ 21 As set forth above, the evidence of record supported the trial court's conclusion that Lazarus detained Angelopoulos in violation of the Retail Theft Act for an unreasonable period of time, in an unreasonable manner, and for a nefarious purpose. At the very least, Lazarus's conduct exhibited a reckless indifference to the rights of Angelopoulos. Accordingly, we discern no error by the trial court in submitting the issue of punitive damages to

the jury. Thus, Lazarus is not entitled to relief on this claim.

¶ 22 For the foregoing reasons, we affirm the Order of the trial court awarding a new trial to Angelopoulos.

¶ 23 Order affirmed.

court's ruling on Angelopoulos's post-trial Motion, and the record reflects no instances

of bias against Lazarus by the trial judge.