J-A30007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOHN KODENKANDETH | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DANIEL MCNABB, OWNER, T/D/B/A SHOP 'N SAVE, JAMES A. SORBARA AND CHRISTINE A. SORBARA, LANDLORD, IN PERSONAM AND IN REM DEFENDANTS, INDIVIDUALLY AND SEVERALLY, IN SOLIDO | |
| Appellees | No. 377 WDA 2017 |
| v. | |
| YOUGHIOGHENY VALLEY SPECIALTY SERVICES, LLC, | |
| Appellees | |

Appeal from the Order Entered February 13, 2017
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-14-018887

BEFORE:  BOWES, J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:            **FILED FEBRUARY 27, 2018**

John Kodenkandenth appeals from the order granting summary judgment in favor of Daniel McNabb, owner, t/d/b/a Shop 'n Save ("Shop 'n Save"), James A. Sorbara and Christine A. Sorbara, landlord, in personam and in rem, individually and severally, in solido ("Sorbaras"), and Youghiogheny Valley Specialty Services, LLC ("YVSS").  We affirm.

On October 29, 2012, Appellant traveled to a Shop 'n Save grocery Store located in Mt. Lebanon, Allegheny County. While gathering his groceries, Appellant placed some items in his shopping cart and other items in a brown, reusable grocery bag, which he had placed within the cart. Unbeknownst to Appellant, his activities were observed by a security officer, Gary Stanley, who was providing security for the store through his employment with YVSS. Appellant proceeded to check out, wherein he placed some of his groceries on the conveyor belt. The items he had placed in the reusable grocery bag remained in the shopping cart, and, therefore, they were not included in Appellant's final payment. As the transaction concluded, Mr. Stanley approached Appellant, restrained him on suspicion of retail theft, and led Appellant to an office on the second floor mezzanine area of the building.

While upstairs, Mr. Stanley removed Appellant's jacket and his wallet, which contained Appellant's identification. Appellant explained that the cashier accidentally failed to scan the items from the reusable bag, and offered to pay for them. He then requested an attorney, and repeated his offer to pay for the unaccounted for goods. His pleas were ignored. Instead, Mr. Stanley completed a shoplifter apprehension report, and asked Appellant to sign an acknowledgment indicating that he willfully misappropriated the items in question and releasing Shop 'n Save and YVSS from any liability arising from the incident. Appellant signed the form, but added the notation "not accused," above his signature. Shortly thereafter,

- 2 -

the Mt. Lebanon police arrived in response to Mr. Stanley's call. After the officer discussed the situation with Mr. Stanley and the store manager, Appellant was placed under arrest and transported through the store to a police cruiser parked outside. After spending fifteen minutes inside the vehicle, Appellant was given a citation for retail theft and released.

Based on the foregoing, Appellant was convicted of retail theft before the magisterial district judge. He appealed that decision. When Mr. Stanley subsequently failed to appear at Appellant's hearing, the trial judge adjudicated Appellant not guilty and dismissed the matter. On October 14, 2014, Appellant filed a complaint against Daniel McNabb, the owner of the Shop 'n Save, and the Sorbaras, the owners of the building and land upon which the store is situated. Thereafter, YVSS, Mr. Stanley's employer, was added as an additional defendant. Appellant's complaint lodged various claims, including, *inter alia*, false imprisonment, negligence, and numerous violations of his constitutional rights. Following protracted pretrial litigation, each defendant filed a motion for summary judgment. After a hearing on those motions, the trial court granted the motions for summary judgment filed by the three defendants, and denied a motion for summary judgment filed by Appellant.

Appellant filed a timely appeal and complied with the trial court's order to file a Rule 1925(b) concise statement of errors complained of on appeal.[1] The trial court authored its Rule 1925(a) opinion, and this matter is now ready for our review.

Appellant raises seventeen questions for our consideration:

[1.] Did lower court commit an error of law and abuse its discretion by conducting a perfunctory hearing for summary judgment during which nonmoving plaintiff was not allowed to make a full presentation of his arguments and evidence against all defendants?

[2.] Did court commit error of law or abuse of discretion that favor defendants by failing to look at whole court record. Court favors defendants by failing to comply with [Pa.R.C.P 1035.2] that requires Judge to resolve all doubts and issues in a light most favorable to nonmoving plaintiff based on whole trial court record?

[3.] Did court commit errors of law or abuse its discretion by fabricating background narrative, from a hearsay exhibit A. that supports defendants in its background statement in its opinion on page 3[?]

[4.] Did court commit errors of law and abuse of discretion, by ignoring requirements of [Pa.R.C.P. 1035.2] and by ignoring numerous genuine issues of material facts that are still in dispute[?]

[5.] [Did] court commit errors of [l]aw and abuse of discretion by refusing to preclude all issues including but not limited to [18

_____

[1] During the pendency of this appeal before this Court, Appellant filed a motion to amend the caption of his notice of appeal to conform with the caption requirements of this Court. Insofar as any errors contained within Appellant's notice of appeal did not affect the propriety of this case, we deny Appellant's motion as moot.

Pa.C.S. § 3929] heard by criminal division Honorable Judge Gallo, who ruled on merits that [Appellant] was not guilty of charges of [18 Pa.C.S. § 3929] on June 12, 2013. And this order of criminal division Judge Gallo became final since prosecutor and parties in privity failed to appeal[?]

[6.] Did court commit errors of law or abuse of discretion by refusing to preclude claim for concealment that [Appellant] was not charged in criminal court. Court erred as a matter of law and abuse of discretion, for [Appellant's] right to claim preclusion of "concealment" during motion for summary judgment in February 2017?

[7.] Did court commit errors of law or abuse of discretion by changing order of criminal court Judge Gallo that was on merits and final, rendered on June 12, 2013 to read "dismissed" to favor defendants?

[8.] Did court commit an error of law and abuse of discretion, by assuming that Gary Stanley had probable cause to seize the plaintiff in checkout lane of supermarket[?]

[9.] Did court commit errors of law and abuse of discretion by unconstitutional application of limited immunity and privilege provided to lawful merchants in Retail Theft Act. And discharged [Appellant's] state tort claims, constitutional and civil rights claims?

[10.] Did court commit errors of law and abuse of discretion by using an exhibit A "apprehension report," a hearsay, that was attached to [Appellant's] deposition which was altered, tampered and concealed from [Appellant] for 3 years by defendants?

[11.] Did court commit errors of law and abuse of discretion by allowing two inadmissible affidavits that were not notarized essentially hearsay by Mr. McNabb and Mr. Dennis Moriarty who had no personal knowledge of incident that took place on [October 29, 2012], to be used to favor Defendant Sorbaras?

[12.] Did court commit errors of law and abuse of discretion by using a hearsay, altered and doctored exhibit A and two inadmissible affidavits, whose probative values was far

outweighed by its prejudicial value, in violation of [Pa.R.E. 403, 405, and 608]?

[13.] Did court commit errors of law and abuse of discretion, by allowing defendants to violate [Pa.R.E. 106 and Pa.R.C.P. 4017.1(h)] and not to include deposition of [Appellant] into the trial court record?

[14.] Did court commit error of law or abuse of discretion, favoring defendant Sorbaras by ignoring, four other lower judges who have ruled denying that defendant Sorbaras was "landlord out of possession" and also ignoring four exceptions that apply to general rule for designation as "landlord out of possession"[?]

[15.] Did court commit errors of law and abuse of discretion by arguing that McNabb and YVSS were entitled to shopkeepers['] immunity as codified in Pa Retail Theft Act[?]

[16.] Did court commit error of law or abuse of discretion by ignoring evidence, presented by [Appellant] in his response to defendant McNabb's motion for summary judgment?

[17.] Did court commit an error or abuse of discretion by ignoring civil rights claims of [Appellant] that were upheld by four Judges Hertsberg, Wettick, Delvecchio and Marmo who during 8 preliminary objections that were filed by defendants, overruled objections of defendants for civil rights court 7 and court 8 of [Appellant]?

Appellant's brief at 4-7.

We review a trial court's grant of summary judgment for an abuse of discretion or an error of law. *Finder v. Crawford*, 167 A.3d 40, 44 (Pa.Super. 2017). Our review of questions of law is plenary. *Id*. Where an appellant challenges the grant of summary judgment, we are guided by Pa.R.C.P. 1035.2, which expresses

[w]here there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears

the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Id*. (citation omitted).

Following our review of the certified record, we find the trial court examined the entirety of the record in accordance with its standard of review, and we discern no procedural errors in its grant of Appellees' motions for summary judgment.[2] Moreover, since we find that Appellant's

_____

[2] We observe that Appellant's first, second, third, fourth, seventh, tenth, eleventh, twelfth, thirteenth, and sixteenth issues raise general or specific claims regarding the process utilized by the trial court in granting summary judgment on behalf of Appellees. Based on our review of the record, these claims are without merit. Significantly, the trial court grounded its ruling largely on the averments contained within Appellant's complaint, and his own statements offered during his deposition. The court did not rely on statements made in the affidavits presented by the Appellees that the Sorbaras did not exercise control over Shop 'n Save and YVSS. Simply, Appellant never offered sufficient evidence to establish that the Sorbaras exercised such control. In addition, Appellant failed to indicate how the apprehension report authored by Mr. Stanley was fraudulent. In any case, this evidence was largely cumulative of facts proffered by Appellant himself. Further, Appellant highlights statements contained within the apprehension report that he had placed certain items in his jacket pocket as an issue of fact that remains in dispute. Based on our analysis, *infra*, facts such as this, and others stressed by Appellant, are not material to the outcome of the case. Finally, we note that, based on the pleadings filed in this matter, the trial court was well aware of each parties' arguments and the evidence offered in support of those positions. The record indicates that the trial court considered the entirety of this evidence, and did so in the light most
*(Footnote Continued Next Page)*

fourteenth, fifteenth, seventeenth issues are dispositive, we turn our analysis to those claimed errors.[3]    In his fourteenth issue, Appellant contends that the trial court erred by finding that the Sorbaras were landlords out of possession, and thus, could not be held liable for the charges levied against them in Appellant's amended complaint.

We have long held that "a landlord out of possession in not liable for injuries incurred by third parties on the leased premises because the landlord has no duty to such persons." *Jones v. Levin*, 940 A.2d 451, 454 (Pa.Super. 2007).  We note that "[t]his general rule is based on the legal view of a lease transaction as the equivalent of a sale of the land for the term of the lease." *Id*. (citation omitted).  As such, "liability is premised primarily on possession and control, and not merely [on] ownership." *Id*. However, this rule is not absolute, and we have found exceptions wherein we, nevertheless, hold a landlord out of possession liable for injuries incurred by a third party.  Specifically,

> A landlord out of possession may incur liability (1) if he has reserved control over a defective portion of the demised premises; (2) if the demised premises are so dangerously constructed that the premises are a nuisance *per se*; (3) if the

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

favorable to Appellant as the nonmoving party.  Hence, we perceive no procedural miscues pertinent to the outcome of this case.

[3] We note that our resolution of Appellant's fourteenth, fifteenth, and seventeenth issues necessarily included the resolution of his fifth, sixth, eighth, ninth, and thirteenth issues, as these issues are either repetitive or encompassed within the claims raised in those issues.

lessor has knowledge of a dangerous condition existing on the demised premises at the time of transferring possession and fails to disclose the condition to the lessee; (4) if the landlord leases the property for a purpose involving the admission of the public and he neglects to inspect for or repair dangerous conditions existing on the property before possession is transferred to the lessee; (5) if the lessor undertakes to repair the demised premises and negligently makes the repairs; or (6) if the lessor fails to make repairs after having been given notice of and a reasonable opportunity to remedy a dangerous condition existing on the leased premises.

*Henze v. Texaco, Inc.*, 508 A.2d 1200, 1202 (Pa.Super. 1986) (citations omitted).

Appellant's argument in this regard is multi-faceted. First, he asserts that the trial court erred in granting the Sorbaras' motion for summary judgment because "four other lower judges [have] ruled [on preliminary objections] denying that defendant Sorbaras was [a] 'landlord out of [p]ossession.'" Appellant's brief at 49. Second, Appellant maintains that the Sorbaras are liable for his injuries since they reserved control over the mezzanine area where he was held by Mr. Stanley. In support of this position, Appellant points to an approximately 10,000 square foot discrepancy between the lease agreement entered into between the Sorbaras and SuperValu Holdings, Inc., who is not a party to this action, and the Sorbaras' real estate tax assessment as proof that the Sorbaras reserved control of the mezzanine area.

At the outset, we observe that the prior rulings made by various judges in this matter overruling the Sorbaras' preliminary objections do not have a preclusive effect on the trial court's ruling on summary judgment.

The Sorbaras' preliminary objections challenged the legal sufficiency of Appellant's complaint pursuant to Pa.R.C.P. 1028(a)(4). The trial court may sustain preliminary objections in the nature of a demurrer "only if, assuming the averments of the complaint to be true, the plaintiff has failed to assert a legally cognizable cause of action." *Lerner v. Lerner*, 954 A.2d 1229, 1234 (Pa.Super. 2008). That is a decidedly different standard than the standard provided for summary judgment under Pa.R.C.P. 1035.2, which requires a party, "after the completion of discovery . . . to produce evidence of facts essential to the cause or action or defense[.]" Pa.R.C.P. 1035.2(2). Summary judgment is granted where a party fails to produce evidence of a material fact necessary to establish an element of the cause or action or defense. Pa.R.C.P. 1035.2(1). In light of these differing standards, the rulings concerning preliminary objections in the nature of a demurrer filed early in this litigation do not preclude the trial court from later granting summary judgment.

Turning to the second aspect of Appellant's argument, we find that, when viewing the record in the light most favorable to Appellant as the nonmoving party, the trial court did not err in finding the Sorbaras were landlords out of possession, and therefore, they were not liable for any injuries incurred by Appellant. Significantly, Appellant did not allege and did not supply evidence to support the conclusion that the Sorbaras controlled the mezzanine area, or were in any way responsible for the harm that he purportedly sustained.

Moreover, Appellant's contentions are belied by the certified record.  In 1998, the Sorbaras leased the land and building now containing the Shop 'n Save grocery store to SuperValu Holdings, Inc.[4]  Although the lease defines the term "Rentable Feet," as "[t]he actual number of square feet of finished building space, including any and all floors, but excluding mezzanines not used for sales purposes . . .," it explicitly leases the entirety of the "Premises," as defined by an attachment to the lease that provided a legal description of the lot containing the building.  *See* Freestanding Lease Agreement, 8/17/98, at ¶¶ 1.8, 1.10, 2.1, and Exhibit A.  The lease did not expressly reserve the mezzanine area for the use and control of the Sorbaras, and the term "rentable feet" is never used to indicate the same. Indeed, Appellant's testimony revealed that Shop 'n Save employees were utilizing the mezzanine area for Shop 'n Save business at the time he was held, which also supports the conclusion that the Sorbaras were landlords out of possession at the time of the incident in question.  Further, there is no evidence of record indicating that the Sorbaras exercised control over Shop 'n Save activities or business.

Finally, Appellant did not establish any of the exceptions to the landlord out of possession rule outlined above, such as the existence of a

---

[4] Subsequently, in 2006, SuperValu, Holdings Inc., subleased the premises to J & D Supermarkets, LLC, the owner of the Shop 'n Save in question.  J & D Supermarkets, LLC, is not a party to this proceeding.

defect in the mezzanine itself that caused the harm he sustained. Appellant's evidence and pleadings clearly reflects that the harm he supposedly sustained was caused by Mr. Stanley and the Mt. Lebanon police department, and not the result of a defective condition of the building, a failure to inspect the building, or negligent repair of the building. Since Appellant alleged that he was injured by a third party while inside the Sorbaras leased premises, and the Sorbaras were landlords out of possession, the trial court did not err in granting summary judgment in their favor. **Levin**, **supra**.

Appellant's fifteenth claim challenges the trial court's ruling that Shop 'n Save and YVSS were entitled to immunity pursuant to the Retail Theft Act. The relevant provisions read:

(a)  Offense defined.--A person is guilty of retail theft if he:

(1)  takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof;

. . . .

(c)  Presumptions.--Any person intentionally concealing unpurchased property of any store or other mercantile establishment, either on the premises or outside the premises of such store, shall be prima facie presumed to have so concealed such property with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof within the meaning of subsection (a), and the

- 12 -

finding of such unpurchased property concealed, upon the person or among the belongings of such person, shall be prima facie evidence of intentional concealment, and, if such person conceals, or causes to be concealed, such unpurchased property, upon the person or among the belongings of another, such fact shall also be prima facie evidence of intentional concealment on the part of the person so concealing such property.

. . . .

(d)  Detention.--A peace officer, merchant or merchant's employee or an agent under contract with a merchant, who has probable cause to believe that retail theft has occurred or is occurring on or about a store or other retail mercantile establishment and who has probable cause to believe that a specific person has committed or is committing the retail theft may detain the suspect in a reasonable manner for a reasonable time on or off the premises for all or any of the following purposes:  to require the suspect to identify himself, to verify such identification, to determine whether such suspect has in his possession unpurchased merchandise taken from the mercantile establishment and, if so, to recover such merchandise, to inform a police officer, or to institute criminal proceedings against the suspect.  Such detention shall not impose civil or criminal liability upon the peace officer, merchant, employee, or agent so detaining.

18 Pa.C.S. § 3929(a), (c), and (d).  Thus, pursuant to § 3929, a merchant may detain a suspected shoplifter, without liability, for the purpose of (a) identifying the suspect, (b) verifying his identity, (c) determining whether he had unpurchased merchandise in his possession, (d) recovering unpurchased merchandise from the suspect, (e) informing a peace officer, and (f) instituting criminal proceedings.  *Angelopoulos v. Lazarus PA Inc.*, 884 A.2d 255, 260 (Pa.Super. 2005).  Finally, for the purposes of  § 3929, the term "merchant" is defined as:  "An owner or operator of any retail

- 13 -

mercantile establishment or any agent, employee, lessee, consignee, officer, director, franchisee or independent contractor of such owner or operator." 18 Pa.C.S. § 3929(f).

In granting summary judgment on behalf of Shop 'n Save and YVSS, the trial court determined that both parties were "merchants" under § 3929, and thus, immune from liability. Appellant assails this ruling, contending that Mr. Stanley was not a policeman or employee of Shop 'n Save, and that there was no written contract between Shop 'n Save and YVSS. Citing **Angelopoulus**, **supra**, he argues that Shop 'n Save "violated all permissible actions" under the Retail Theft Act, as enumerated above, for example, "violently seizing [Appellant] in the checkout lane without explanation," "false imprisonment for more than . . . 100 minutes," "handcuffing and holding [Appellant]," and "making [Appellant] sign a blank preprinted form under pretext that it was just paperwork, and later using form as a confession of guilt[.]" Appellant's brief at 53. Essentially, Appellant asserts that the parties are not entitled to immunity because Mr. Stanley was not a merchant or agent under contract with Shop 'n Save, and his apprehension was not reasonable in manner or time.

We begin our analysis by observing that Appellant's contentions that Mr. Stanley was not an agent under contract with Shop 'n Save misses the mark. Mr. Stanley is not a party to this matter. Hence, whether he is immune from liability in this matter is immaterial. Rather, the central question herein is whether immunity applies to Shop 'n Save and YVSS for

- 14 -

the actions of Mr. Stanley. In this vein, we note that those entities meet the threshold requirements of the Retail Theft Act to be entitled to immunity.

Here, as a grocery store, Shop 'n Save operates a retail mercantile establishment, and therefore, it qualifies as a "merchant" pursuant to 18 Pa.C.S. § 3929(f). It is also undisputed that Shop 'n Save entered into an oral contract with YVSS for the provision of loss prevention services. As such, YVSS also qualifies as a "merchant" under § 3929(f) since it is an independent contractor or agent of a retail mercantile establishment. Therefore, Shop 'n Save and YVSS are entitled to immunity if Appellant's detention was supported by probable cause, and was otherwise reasonable.

First, we find that the trial court did not err in determining that Appellant's detention was supported by probable cause. The trial court noted that, "based on Appellant's own testimony, [he] placed grocery items in his bag in his shopping cart and proceeded through the checkout line without paying for them." Trial Court Opinion, 8/3/17, at 8-9. It determined that, as a matter of law, Appellant's actions established sufficient probable cause to support his detention since "a reasonably prudent person viewing the events as [Mr.] Stanley saw them could believe that Appellant was shoplifting merchandise from Shop 'n Save." *Id*. at 9-10.

The record reveals that Mr. Stanley observed Appellant placing goods in both his shopping cart, and in a brown reusable bag that he had placed within the shopping cart. Appellant paid for the goods within the cart, and not the goods within his bag. Under § 3929(c), when a customer conceals

unpurchased merchandise while in the store, it is presumed that the person did so with the intent to deprive the merchant of its possession.[5]  18 Pa.C.S. § 3929(c).  Hence, at the moment Mr. Stanley approached Appellant, he had probable cause to believe that Appellant had taken possession of merchandise offered for sale by Shop 'n Save with the intent of depriving Shop 'n Save thereof.  Thus, the trial court did not err in this regard.

Second, in granting Appellees' motions for summary judgment, the trial court necessarily determined that Appellant's detention was reasonable in both manner and time.  Upon review of the record, we conclude that the court did not err in so finding.  Instantly, Appellant alleged that he was violently apprehended, taken into an office, and not allowed to leave.  While inside the office, Mr. Stanley removed Appellant's jacket and wallet, searched the reusable cloth bag, and checked Appellant's identification.  Subsequently, Mr. Stanley filled out an "apprehension report," which Appellant initially refused to sign without the aid of an attorney, but later

_____

[5] Elsewhere in this brief, Appellant claims that this Court is precluded from using the term "concealed" when describing his action of placing some of his items out of plain sight in the reusable bag.  Appellant asserts that, since he was only charged with retail theft under 18 Pa.C.S. § 3929(a)(1), we are precluded from finding that he "concealed" any items for the purposes of § 3929(c).  However, the outcome of Appellant's later criminal proceedings has no bearing on whether Mr. Stanley had probable cause at the time of his apprehension.  Furthermore, § 3929(c) is not a separate offense under the Crimes Code, but rather, a presumption which applies to the crime of retail theft.  Thus, we are not precluded from describing Appellant's conduct as the "concealment" of goods within a non-transparent bag.

acquiesced into signing when told that he would be released. That form contained a clause providing immunity for Shop 'n Save and YVSS. Rather than release Appellant, Mr. Stanley notified police who arrived shortly thereafter. His detention with Shop 'n Save lasted between fifty-five and one-hundred minutes.[6] Additionally, Appellant did not sustain any injuries or seek medical treatment following this ordeal.

The record reveals that Mr. Stanley's conduct within the second floor office complied with the conduct permitted by § 3929. During Appellant's detention, he identified the suspect, verified his identity, determined whether Appellant had unpurchased merchandise in his possession, recovered unpurchased merchandise, and informed a police officer. *Angelopoulos*, *supra*. Although Mr. Stanley's supposed promise that he would release Appellant if Appellant signed the apprehension report raises the specter of coercion, that form does not provide the basis of immunity

---

[6] In his complaint, Appellant alleged that he signed the apprehension report after being detained for forty-five minutes, and the police arrived ten minutes later. Complaint, 10/14/14, at ¶¶ 15-17. In subsequent filings, Appellant claimed he was held by Shop 'n Save for more than ninety minutes. Pretrial Statement, 1/20/17, at 4. We note with some consternation that only portions of Appellant's 10/29/15 deposition were included in the record, and thus, Appellant has not provided evidence on the record to support the actual duration of his detention. We remind Appellant that it was his responsibility to ensure the record was complete. *Ignelzi v. Ogg, Cordes, Murphy and Ignelzi, LLP*, 160 A.3d 805, 808 n.4 (Pa.Super. 2017) (noting "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty.").

herein, Appellant was ultimately acquitted of his criminal offense, and Appellant was not under arrest at that time. That is, the legal effect of that form is immaterial to the outcome of this matter, nor did it serve as a basis for a subsequent criminal conviction. Thus, this aspect of Appellant's detention does not render the whole incident to be unreasonable.

In so far as there is a discrepancy in the time Appellant spent detained, he did not allege or establish any extended period where Mr. Stanley was not performing one of the above-named functions or discussing the matter with Shop 'n Save management or the police. The duration of time Appellant remained in the office was apparently necessary for Mr. Stanley to investigate the suspected offense.

Appellant challenged the reasonableness of his detention by relying on our holding in **Angelopoulos**, **supra**. We find this case inapposite. In **Angelopoulos**, the shopper, Angelopoulos, ate two chocolates from an open box on display in a grocery store. This act was witnessed by the loss prevention team, who approached and detained Angelopoulos on suspicion of retail theft. The loss prevention associate took Angelopoulos to a nearby office, where her purse, bags, and body were searched. A loss prevention associate then handcuffed Angelopoulos to a table affixed to the floor. After taking Angelopoulos's identification, the loss prevention associate presented her with a statement of admission, which she refused to sign. Angelopoulos's pleas to remove the handcuffs were denied based on a store policy, which required all suspected shoplifters to be handcuffed. After being

handcuffed for fifty to fifty-five minutes, Angelopoulos signed the statement of admission and was released from the restraints.

Angelopoulos filed a complaint against the grocery store, and the jury found, among other things, that Angelopoulos's detention was reasonable in both time and manner. Following a post-trial motion, the trial court determined that this finding was against the weight of the evidence since the grocery store had used the handcuffs to accomplish an end beyond one of the enumerated purposes of the Retail Theft Act outlined above, and it refused to release Angelopoulos when she initially declined to sign the admission form. The court granted Angelopoulos a new trial, and the grocery store appealed.

On appeal, we found that Angelopoulos's detention was unreasonable because she remained in handcuffs long after the loss prevention associate had completed the procedures permitted by the Retail Theft Act. In so finding, we stated "[w]e agree with the trial court's conclusion that [the grocery store's] continued detention of Angelopoulos, in handcuffs, exceeded all bounds of decency and we express our outrage at such a procedure." **Angelopoulos**, **supra** at 261. As such, we affirmed the trial court's grant of a new trial.

**Angelopoulos** is readily distinguishable from the facts herein. Unlike **Angelopoulos**, Appellant was not handcuffed while being detained by Shop 'n Save. Rather, he claimed that he was handcuffed after the police arrived and arrested him for retail theft, that is, after his detainment by Shop 'n

- 19 -

Save terminated. Further, of utmost import, as noted above, the record does not support the conclusion that Appellant was detained in excess of the amount of time required to complete the investigatory actions permitted by the Retail Theft Act. Simply, Appellant did not establish that he was detained for an unreasonable amount of time since Mr. Stanley conducted only permissible investigatory activities while detaining Appellant, and then promptly notified the police. As such, the trial court did not err in determining that Appellant's detainment was reasonable in duration. Thus, since Appellant's detainment was supported by probable cause and was reasonable in manner and time, we conclude that the trial court did not err in determining that, as a matter of law, Shop 'n Save and YVSS were entitled to immunity pursuant to § 3929(d). Hence, this claim fails.

Finally, Appellant challenges the trial court's legal conclusion that Appellees were not state actors for the purposes of his constitutional claims pursuant to 42 U.S.C. § 1983. In his complaint, Appellant raised numerous allegations contending that Appellees violated his civil rights under the United States Constitution. Among his various claims, Appellant claimed that Appellees discriminated against him based on race and national origin, violated his due process and equal protection rights, committed an unlawful warrantless search and seizure, violated his right to counsel, and failed to provide him with **_Miranda_** warnings.

It is well-established that

> [t]o properly state a Section 1983 claim, a plaintiff must allege a deprivation of a right guaranteed by the Constitution or the laws of the United States by a defendant acting under color of law. There are two essential elements necessary to state a claim under 42 U.S.C. § 1983: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the Plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Snead v. Society for Prevention of Cruelty to Animals of Pennsylvania*, 929 A.2d 1169, 1180 (Pa.Super. 2007) (citations omitted). We have long held security guards working for private companies do not act under the color of state law. *Commonwealth v. Lacy*, 471 A.2d 888, 890 (Pa.Super. 1984). In *Lacy*, we found § 3929(d) was constitutional, and specifically determined that security guards "acting in a private capacity, rather than under color of state law . . . were entitled, upon probable cause, to search [a suspect] without applying for or receiving a search warrant." *Id*. Nevertheless, state action may be attributed to private individuals pursuant to the "close nexus" test, "where the state can be deemed responsible for the specific conduct of the private actor." *Hennessy v. Santiago*, 708 A2d 1269, 1276 (Pa.Super. 1998) (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974)).

Appellant alleges that Appellees were acting under the color of state law at the time of his apprehension and detainment.[7] He contends that

_____

[7] Appellant's final argument also asserts that the trial court was barred from finding Appellees were not state actors based on claim and issue preclusion since four judges earlier in the litigation overruled preliminary objections by
*(Footnote Continued Next Page)*

state action can be attributed to Appellees because they share a "close nexus" and cooperate with the Mt. Lebanon police department. Appellant's brief at 61. Appellant does not describe that nexus, or explain how the police department is responsible for the conduct surrounding his detainment.

In any case, our review of the record reveals no basis upon which we could attribute Mr. Stanley's actions to the Mt. Lebanon police department, and Appellant did not allege or provide evidence supporting such a close nexus. After investigating the suspected retail theft, Mr. Stanley reported the crime to police. The police then arrived, gathered information regarding the incident, and arrested Appellant. There is no indication in the record, and Appellant does not point to any specific fact, which would lead us to conclude that this incident was anything other than a routine arrest. Thus, we discern no error in the trial court's determination that Appellees were not state actors for the purposes of Appellant's § 1983 claims.

In summary, Appellant raised an abundance of issues purporting to raise genuine issues of material fact. When viewing the record in the light most favorable to Appellant as the nonmoving party, we find that Appellees

_(Footnote Continued)_ _____

Appellees raising the same claim. For the reasons set forth in our analysis of Appellant's fourteenth issue, _infra_, this claim fails. In addition, Appellant lodges numerous complaints that the trial court exhibited bias and discriminated against him in granting summary judgment. Appellant's brief 57-58. These claims do not address whether Appellees are state actors, and, in any case, they were not raised in his 1925(b) statement. Thus, they are waived. Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

herein cannot be held liable for the alleged injuries Appellant sustained on October 29, 2012.  Thus, any factual dispute remaining in this matter is not material to the outcome of this litigation, and the trial court did not err in granting summary judgment in favor of Appellees.  As such, we need not reach Appellant's remaining issues.

Order affirmed.  Motion to amend caption of notice of appeal denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/27/2018

- 23 -